Ndongo v. Sessions

BIA
Nelson, IJ
A087 779 442

## UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

## SUMMARY ORDER

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 26th day of April, two thousand seventeen.

PRESENT:
ROBERT A. KATZMANN,
*Chief Judge,*
BARRINGTON D. PARKER,
DENNY CHIN,
*Circuit Judges.*

_____

CHEIKHNA ABDOULAYE NDONGO,
*Petitioner,*

v.                                                          15-3326
                                                            NAC
JEFFERSON B. SESSIONS III, UNITED
STATES ATTORNEY GENERAL,
*Respondent.*

_____

FOR PETITIONER:          Andy Wong, Washington, D.C.

FOR RESPONDENT:          Benjamin C. Mizer, Principal Deputy
                         Assistant Attorney General; Jeffrey
                         R. Leist, Senior Litigation Counsel;
                         David Schor, Trial Attorney, Office
                         of Immigration Litigation, United
                         States Department of Justice,
                         Washington, D.C.

UPON DUE CONSIDERATION of this petition for review of a Board of Immigration Appeals ("BIA") decision, it is hereby ORDERED, ADJUDGED, AND DECREED that the petition for review is DENIED.

Petitioner Cheikhna Abdoulaye Ndongo, a native and citizen of Mauritania, seeks review of an October 1, 2015, decision of the BIA, affirming a May 1, 2014, decision of an Immigration Judge ("IJ") denying Ndongo's application for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT"). *In re Cheikhna Abdoulaye Ndongo,* No. A087 799 442 (B.I.A. Oct. 1, 2015), *aff'g* No. A087 799 442 (Immig. Ct. N.Y. City May 1, 2014). We assume the parties' familiarity with the underlying facts and procedural history in this case.

Under the circumstances of this case, we have reviewed both the IJ's and the BIA's opinions "for the sake of completeness." *Wangchuck v. Dep't of Homeland Sec.*, 448 F.3d 524, 528 (2d Cir. 2006). The applicable standards of review are well established. *See* 8 U.S.C. § 1252(b); *Xiu Xia Lin v. Mukasey*, 534 F.3d 162, 165-66 (2d Cir. 2008).

For asylum applications like Ndongo's, governed by the REAL ID Act, the agency may, "[c]onsidering the totality of the circumstances," base a credibility finding on "the inherent plausibility" of the applicant's account and on inconsistencies

2

in an applicant's testimony and evidence, "without regard to whether" those inconsistencies "go to the heart of the applicant's claim." 8 U.S.C. § 1158(b)(1)(B)(iii). "We defer . . . to an IJ's credibility determination unless, from the totality of the circumstances, it is plain that no reasonable fact-finder could make such an adverse credibility ruling." *Xiu Xia Lin*, 534 F.3d at 167. "A petitioner must do more than offer a plausible explanation for his inconsistent statements to secure relief; he must demonstrate that a reasonable fact-finder would be *compelled* to credit his testimony." *Majidi v. Gonzales*, 430 F.3d 77, 80 (2d Cir. 2005) (internal quotation marks omitted).

The threshold question is whether there is a credibility determination to review here. An IJ must "decide explicitly" whether an applicant's testimony is credible. *Diallo v. INS*, 232 F.3d 279, 290 (2d Cir. 2000). We conclude that there is a sufficiently explicit determination in this case. The IJ cited the REAL ID Act, noted the "serious inconsistencies" among Ndongo's statements and evidence, and concluded that, "[b]ased on the inconsistencies," Ndongo "had failed to meet the burden of proof of establishing past persecution or a well-founded fear of persecution." Special App. 10, 12; *see also Zaman v. Mukasey*, 514 F.3d 233, 237-38 (2d Cir. 2008).

3

Turning to the denial of relief, the agency's adverse credibility determination is supported by substantial evidence. The essence of Ndongo's claim is that he was born into slavery in Mauritania and that he fears that his master, who exercised strict control over his movements, will harm him and his family. As discussed below, the inconsistencies call into question the veracity of Ndongo's claim.

First, the agency reasonably relied on inconsistencies concerning Ndongo's wife's place of birth and her current location, as those inconsistencies called into question whether Ndongo's wife and, thus, Ndongo, was a slave. *See* 8 U.S.C. § 1158(b)(1)(B)(iii). Ndongo testified that his wife was born into slavery in Mauritania under the same slave master he was. But his application reports that his wife was born in Senegal. The IJ was not compelled to accept Ndongo's explanation that he was confused. *See Majidi*, 430 F.3d at 80. And the inconsistency was compounded by another concerning his wife's current location: Ndongo's application reported that his wife lived in Senegal, but he testified that she lived in Mauritania.

The IJ also reasonably found Ndongo's testimony concerning his wife implausible. *See Yan v. Mukasey*, 509 F.3d 63, 66 (2d Cir. 2007). In addition to being inconsistent, Ndongo's ultimate testimony that his wife was born in Senegal but went

4

to Mauritania at age 20 raised doubt as to how she came to be a slave in Mauritania. Ndongo's explanation—that he and his wife had not met before their marriage—failed to clarify this issue. *See Majidi*, 430 F.3d at 80. Moreover, Ndongo's application lists his wife's ethnicity as "Bidane," which, as the IJ noted, is generally a group that holds slaves in Mauritania, not a group that is subject to slavery there.

Second, the IJ also reasonably relied on an inconsistency concerning Ndongo's ability to marry. In a supplemental affidavit to his asylum application, Ndongo stated that, as a slave, he was not permitted to marry. Ndongo argues that he meant he was not permitted to marry absent his master's consent. While a plausible explanation, Ndongo has not demonstrated that a reasonable fact-finder would be compelled to accept it. *See id ; Chen v. U.S. Attorney General*, 454 F.3d 103, 106-07 (2d Cir. 2006).

Third, the adverse credibility determination is further bolstered by inconsistencies concerning Ndongo's escape from Mauritania, Ndongo gave no explanation for his testimony that a merchant named Mustafa Wood was the only person who helped him escape, while his supplemental affidavit reflected that Oula Bass helped him flee.

5

Given the inconsistencies that called Ndongo's claim into question, the agency did not err in finding that Ndongo's lack of reliable corroborating evidence was insufficient to rehabilitate his testimony. See *Biao Yang v. Gonzales*, 496 F.3d 268, 273 (2d Cir. 2007). The IJ reasonably gave diminished weight to letters from Ndongo's brother and a psychologist. The letter purportedly from Ndongo's brother does not identify the drafter by name, was not notarized, did not describe how Ndongo escaped Mauritania, and listed an inconsistent return addressee. *See Matter of H-L-H- & Z-Y- Z-*, 25 I. & N. Dec. 209, 215 (B.I.A. 2010) (agency can give little weight to document drafted by interested witness not subject to cross examination), *rev'd on other grounds by Hui Lin Huang v. Holder*, 677 F.3d 130 (2d Cir. 2012). And while the agency credited the psychologist's diagnosis of Posttraumatic Stress Disorder, it reasonably gave diminished weight to the historical facts the psychologist's letter recited because the psychologist had no independent knowledge of events. *See Y.C. v. Holder*, 741 F.3d 324, 334 (2d Cir. 2013) ("We defer to the agency's determination of the weight afforded to an alien's documentary evidence.").

Given the multiple inconsistencies, the implausible testimony, and Ndongo's lack of reliable corroboration, it cannot be said "that no reasonable fact-finder could make such

an adverse credibility ruling." *Xiu Xia Lin*, 534 F.3d at 167. Because asylum, withholding of removal, and CAT relief were all based on the same factual predicate, the adverse credibility determination is dispositive. *Paul v. Gonzales*, 444 F.3d 148, 156-57 (2d Cir. 2006).

For the foregoing reasons, the petition for review is DENIED. As we have completed our review, any stay of removal that the Court previously granted in this petition is VACATED, and any pending motion for a stay of removal in this petition is DISMISSED as moot. Any pending request for oral argument in this petition is DENIED in accordance with Federal Rule of Appellate Procedure 34(a)(2), and Second Circuit Local Rule 34.1(b).

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk